UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| **JEFFREY BAUM,** | ) | CASE NO. 1:13CV1347 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **INTERTEK TESTING SERVICES, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |


**CHRISTOPHER A. BOYKO, J.**:

    This matter comes before the Court on the Motion (ECF DKT #8) of Defendants, Intertek Testing Services, NA, Inc. and George Strom (hereinafter "Defendants"), to Dismiss. Defendants argue that Plaintiff failed to state a claim for which relief can be granted on Counts One, Two, Three, Four, Five, Six, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen. In response, Plaintiff voluntarily withdraws Counts One, Two, Three, Twelve, Thirteen, Fifteen, Seventeen, and Eighteen, and argues that the pleadings were sufficient on Counts Four, Five, Six, Nine, Ten, Eleven, Fourteen, and Sixteen. For the following reasons, Defendants' Motion to Dismiss is granted in full as to

Counts Four, Five, Six, Nine, Eleven, Fourteen, and Sixteen, and in part as to Count Ten as it applies to commissions.

## I. FACTS AND PROCEDURAL HISTORY

In 1997, Plaintiff was hired by Defendant Intertek, a multinational corporation specializing in product testing and certification, as a sales representative.  From 1998 to 2005, Plaintiff received positive performance reviews and received several accolades for his good work.

In 2005, Defendant Strom was a Director of Sales for Intertek.  In this position, Defendant Strom was one of the officers giving performance reviews of sales representatives, including Plaintiff.  While supervising Plaintiff, Defendant Strom allegedly made comments describing Plaintiff as a "f***king a**hole," "pain in the a**," and "piece of s***" and would allegedly ask other employees "why is [Plaintiff] still here?"

On March 31, 2005, Defendant Strom gave Plaintiff a negative performance review, criticizing his professionalism, inter-personal skills, and alleged insubordination.

On October 12, 2009 Plaintiff was promoted to National Sales Manager and shortly after, received a positive review, which resulted in a pay increase.  According to Plaintiff, Defendant Strom then told Plaintiff that he was ineligible for the raise.

In April, 2012, Plaintiff alleges that Defendant Intertek's Director of Sales, Vince Reynolds, "promised to [Plaintiff] that he would be justly rewarded" for his recent positive performance review.

In 2012, Defendant Strom was promoted to a supervisory position over Plaintiff. Plaintiff alleges that, while in this position, Defendant Strom "unilaterally changed

[Plaintiff's] agreed upon Compensation Agreement by altering the internal coding of [Plaintiff's] commissions and crediting [Plaintiff's] accounts to others," allegedly resulting in Plaintiff receiving less than his required commissions.

In October 2012, Plaintiff requested time off under the Family Medical Leave Act (FMLA) because of the birth of his child, but he continued to work during his leave.  Plaintiff also communicated with counsel regarding employment matters.  Defendant Intertek requested that Plaintiff stop copying counsel, but retracted its request when Plaintiff's counsel objected.

Also in 2012,  Plaintiff alleges that Defendant Strom "establish[ed] sales quotas that were nearly impossible to attain while shrinking [Plaintiff's] sales territory, placing [Plaintiff] on a ninety (90) day performance plan for his failure to reach the unattainable goals set for him, immediately requiring travel of [Plaintiff] but failing to provide support or reimbursement for certain expenses and failing to respond to [Plaintiff's] inquiries and concerns as to why such action is being taken."  Plaintiff states that "[a]ll of the foregoing were ratified and/or acquiesced by Intertek through District Sales Manager Stephanie Barrows."

## II. LAW AND ANALYSIS

A.     *Legal Standard*

In their 12(b)(6) Motion to Dismiss, Defendants assert that Plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The grounds on which the Plaintiff pleads his case must be sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim that is 'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), quoting *Twombly*, 550 U.S. at 570. A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*., quoting *Twombly*, 550 U.S. at 556. Conclusory statements or "a formulaic recitation of the elements of a cause of action will not do." *Id*., quoting *Twombly*, 550 U.S. at 555.

    B.    *Counts Four and Five for Negligent Hiring, Retention and Supervision*

In Ohio, the elements for claims of negligent hiring, negligent retention, and negligent supervision are the same. The plaintiff in all three claims must sufficiently plead five elements: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (3) the employee's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries." *Hout v. City of Mansfield*, 550 F. Supp. 2d 701 (N.D. Ohio 2008).

Case law in the Sixth Circuit indicates that in order to sufficiently plead claims of negligent hiring or supervision, the plaintiff is required to "establish a tort claim against the individual employee in order to prevail." *Hout*, 550 F. Supp. 2d at 745, citing *Minnich v. Cooper Farms, Inc.*, 39 Fed. Appx. 289 (6th Cir. 2002); *see also Hout*, 550 F. Supp. 2d at 746 ("Ohio Courts take the view that a plaintiff must be able to establish a tort claim against the individual employee in order to maintain an action for negligent supervision or retention against the employer.").

Here, Plaintiff has failed to sufficiently plead a tort claim against the individual employee, Defendant Strom.  Plaintiff states that his claims of Tortious Interference with a Contract, Defamation, and Violation of Public Policy are sufficient to support negligent retention and supervision claims.  However, as discussed below, Plaintiff's claim for Tortious Interference with a Contract must be dismissed because it cannot be sustained against an officer of the corporation; and his claim for Defamation fails because it is based on non-actionable opinion.  Additionally, Plaintiff's claim for Violation of Public Policy has been brought solely against Defendant Intertek, not the individual employee in question, Defendant Strom.

Further, when a plaintiff makes a claim for negligent hiring, retention and supervision, "foreseeability is the test of employer liability."  *Hout*, 550 F. Supp. 2d at 745, citing *Dawson v. Airtouch Cellular*, 42 F. Supp. 2d 767, 772 (S.D. Ohio 1999).  When making allegations of negligent hiring, the issue is whether the employer "knew or should have known of the employee's criminal or tortious propensities."  *Hout*, 550 F. Supp. 2d at 745, citing *Dawson*, 42 F. Supp. 2d at 773 (dismissing claim where plaintiff failed to allege that the supervisor had any criminal or tortious propensities).

Plaintiff has failed to sufficiently plead his claim for negligent hiring.  He failed to allege Intertek's knowledge of any "criminal or tortious propensities" that Defendant Strom might have.  While Plaintiff alleges that Intertek had "actual knowledge of Mr. Strom's incompetence in his supervision of Mr. Baum," incompetence does not rise to the level of "criminal or tortious propensities."

Plaintiff has failed to sufficiently plead Counts Four and Five, for Negligent Hiring,

Retention, and Supervision; and therefore, these claims are dismissed.

      C.     *Count Six for Tortious Interference with a Contract*

In Ohio, when complaining of a tortious interference with contract, a plaintiff must allege: "(1) the existence of a contract; (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) damages." *Dorricott v. Fairhill Center for Aging*, 2 F. Supp. 2d 982, 989 (N.D. Ohio 1998), citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 415, 419 (1995). Additionally, a plaintiff must show that the interference was by a third person. "Officers, directors, and creditors of a corporation have a privilege to interfere with contracts in furtherance of their legitimate business interests." *Dorricott*, 2 F. Supp. 2d at 990, citing *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988). In order for an officer of a corporation to be held liable for tortious interference with a contract, a plaintiff must assert that the officer was acting outside of his capacity as a corporate officer. *Dorricott*, 2 F. Supp. 2d at 990.

Plaintiff has failed to show that Strom, as an officer of Intertek, was acting outside of his capacity as a corporate officer. In fact, the Court notes that in ¶ 34 of the Complaint, Plaintiff states that "Mr. Strom acted in the course and scope of his duties as Intertek's agent and employee."

Thus, Plaintiff's claim for tortious interference with a contract is dismissed.

      D.     *Count Nine for Unjust Enrichment*

For an unjust enrichment claim under Ohio law, a plaintiff must prove three things: "1) plaintiff conferred a benefit on defendant; 2) defendant knew of such benefit; and 3)

defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F. Supp. 2d 763, 771 (N.D. Ohio 2004). "Ohio law generally does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject." *Id*. at 772. However, where an express contract is in place between the parties, unjust enrichment may be pled "when the existence of a contract is in dispute" or "where there is evidence of fraud, bad faith, or illegality." *Id*. at 772; *see also Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213 (6th Cir. 1992) (denying recovery under theory of unjust enrichment because no allegation of fraud, bad faith, or illegality in the making of the governing contract).

Here, Plaintiff's unjust enrichment claim must be dismissed. As stated in the Complaint at ¶ 3, Plaintiff's employment was subject to an express contractual agreement between Plaintiff and Defendant Intertek. Plaintiff has not pled that this contract is in dispute, nor made any allegation of fraud, bad faith or illegality in the making of the governing contract. Although, in his Memorandum in Opposition to Defendant's Motion to Dismiss, Plaintiff claims that he was actually uncompensated for work, he failed to plead this theory in his Complaint and has failed to state what work he was uncompensated for. Additionally, his Breach of Contract claims may allow recovery of any proven uncompensated commissions under the contract.

Because Plaintiff has failed to state a valid claim for Unjust Enrichment, Count Nine is dismissed.

    E.    *Count Ten for Semi-Monthly Payment of Wages under O.R.C. § 4113.15*

Under O.R.C. § 4113.15 (D)(1), an employee is entitled to recovery of wages that

have not been paid within an appropriate amount of time. O.R.C. § 4113.15. It defines an employee's wage as being "the net amount of money payable to the employee, including any guaranteed pay or reimbursement for expenses." Although the Ohio Supreme Court has not explicitly determined what payments could be encompassed under the meaning of the statute, the Ohio Fifth District Court of Appeals has addressed commissions under the statute. In its *Haines & Co.* decision, the court stated that "the definition of the word wage as used in Section 4113.15 does not include commissions, which are not guaranteed pay or reimbursement for expenses." *Haines & Co. v. Stewart*, No. 2000CA00138, 2001 WL 166465, at *3 (Ohio Ct. App. 5th Dist. Feb. 5, 2011).

Further, while the Fifth District affirmed that an employer has no right to withhold commissions that were earned under the contract and had vested prior to termination, it also found that O.R.C. § 4113.15 was only applicable to employment situations where the wage amount is undisputed. *Haines & Co.*, 2001 WL 166465, at *2-3. The Court stated that O.R.C. § 4113.15 was not applicable "because a legitimate dispute exists between the parties as to the payment of the accrued commissions at termination." *Haines & Co.*, 2001 WL 166465, at *3.

Here, O.R.C. § 4113.15 does not apply to Plaintiff's claim for commissions. Commissions are not encompassed by the term "wages," as defined by the statute, because they are not guaranteed pay or reimbursement for expenses. Even if this Court determines that commissions fall under the definition of "wage" under the statute, the Complaint indicates that a dispute exists between the parties as to their existence. Further, even if this Court were to hold that commissions could be considered wages, Plaintiff has alleged within

his Complaint that these amounts have been "manipulated" and "changed." A legitimate dispute exists as to the amount of commissions due to Plaintiff, making O.R.C. § 4113.15 inapplicable.

Therefore, Plaintiff's claim under O.R.C. § 4113.15 is dismissed to the extent that it seeks damages for the untimely payment of commissions.

### F. *Count Eleven for Retaliation*

Plaintiff has failed to sufficiently plead a claim for Retaliation. Under the *Twombly*/*Iqbal* pleading standard, Plaintiff's Complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The claim must be more than conclusory or "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "'Naked assertions' devoid of 'further factual enhancement'" are insufficient to support a claim in a complaint. *Id.*, quoting *Twombly*, 550 U.S. at 557. The claim itself must be "plausible on its face." *Twombly*, 550 U.S. at 570.

Merely stating that Plaintiff "has been and continues to be retaliated against" is a "naked assertion" and insufficient to plead that retaliatory action has been taken against Plaintiff.

As such, Plaintiff's Retaliation claim fails to meet the pleading standard required under *Twombly* and *Iqbal*, and must be dismissed.

### - *FMLA Retaliation*

Moreover, Plaintiff has failed to sufficiently plead a claim of Retaliation under the Family Medical Leave Act (FMLA). Plaintiff first mentions this theory in his Opposition to Defendant's Motion to Dismiss. As such, a reasonable defendant would not read the

Complaint to understand that it encompassed a claim for Retaliation under the FMLA.

Additionally, Defendants correctly state that even if the claim of retaliation under the FMLA were sufficiently pled, Plaintiff has not alleged a *prima facie* case of Retaliation under the FMLA.  To establish a *prima facie* case of Retaliation under the FMLA, Plaintiff must prove: "(1) they were engaged in a statutorily protected activity; (2) Defendant knew they were exercising their FMLA rights; (3) they suffered an adverse employment action; and (4) a causal connection existed between the retaliatory action and the protected activity." *Hopkins v. Chartrand*, No. 1:11 CV 2558, 2013 WL 3787596, at *8 (N.D. Ohio July 18, 2013), citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).

Here, Plaintiff fails to allege that any retaliatory action has taken place.  Plaintiff states that his placement on a "ninety (90) day performance improvement plan" was an adverse employment action subject to his FMLA leave.  However, Defendant correctly asserts that merely being placed on a performance improvement plan is not an adverse employment action within the meaning of the FMLA.  *See Novotny v. Reed Elsevier*, 291 Fed. Appx. 698, 703 (6th Cir. 2008) (stating that the placement of the plaintiff "on a plan to improve her work performance [does] not qualify as a materially adverse employment decision[]"); *see also Agnew v. BASF Corp.*, 286 F.3d 307 (6th Cir. 2002) ("[W]e have held that criticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions.") .

Because Plaintiff has failed to sufficiently state a claim for Retaliation, Count Eleven is dismissed.

    G.    *Count Fourteen for Violation of Public Policy*

Plaintiff's Count Fourteen, a claim for Violation of Public Policy, is duplicative of Plaintiff's Count Eleven claim for Retaliation.

Further, a public policy violation need not be recognized where "there already exists a statutory remedy that adequately protects society's interests." *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 244 (2002) (finding that a common-law action for wrongful discharge should not be recognized where an adequate statutory remedy exists). The existence of a statutory remedy gives "the aggrieved employee an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct." *Id*. Not only is Plaintiff essentially re-alleging the same cause of action as Count Eleven, but he specifically alleges, in his own Complaint under Count Fourteen, violations of "Mr. Baum's ***statutory*** rights." (Emphasis added).

Because statutory remedies exist for the alleged unlawful behavior, Count Fourteen for Violation of Public Policy is dismissed.

    H.    *Count Sixteen for Defamation*

For an Ohio Defamation claim, Plaintiff must allege: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication; (c) fault amounting to at least negligence; (d) either actionability of the statement irrespective of the special harm or the existence of special harm caused by the publication." *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008), citing *Akron-Canton Waste Oil, Inc. v. Safety Kleen Oil Serv., Inc.*, 81 Ohio App. 3d 591, 611 (9th Dist. 1992). "Expressions of opinion are protected under the Ohio Constitution and therefore cannot constitute defamation under state law." *Harris*, 513 F.3d at

11

522, citing *Vail v. Plain Dealer Publ'g Co.*, 72 Ohio St. 3d 279 (1995).

To determine whether the statement is opinion, and therefore not actionable as defamation, Ohio courts apply the "totality of the circumstances test." *Harris*, 513 F.3d at 522, citing *Vail*, 72 Ohio St. at 185.  The test calls on the Court to consider "the specific language used, whether the statement is verifiable, the general context of the statement, and finally, the broader context in which the statement appeared." *Harris*, 513 F.3d at 522, citing *Vail*, 72 Ohio St. at 185.  A "mixed expression" of opinion, one that implies an assertion of objective fact, "may . . . be the basis for an action for defamation, since it implies an allegation of undisclosed defamatory facts as the basis for the opinion." *Harris*, 513 F.3d at 522, citing *Falls v. Sporting News Pub. Co.*, 834 F.2d 611, 615 (6th Cir. 1987).

Plaintiff bases his claim of Defamation on statements that are clearly opinion.  The language allegedly used by Mr. Strom cannot reasonably be considered statements of fact.  The alleged descriptions of Plaintiff, such as "f***ing a**hole," "pain in the a**," and "piece of s***" are clearly statements of opinion and could not reasonably be thought to be literal.  As the Sixth Circuit stated in *Greenhalgh v. Casey*, "[w]hile the term [a**hole] may be considered crude or uncouth, it cannot be considered slanderous. . . . As a matter of law, referring to plaintiff as an '[a**hole]' is not actionable; it simply is, as the district court concluded, 'rhetorical hyperbole' [which could not be reasonably interpreted to state an actual fact]." *Greenhalgh v. Casey*, No. 94- 3824, 1995 WL 570908, *2 (6th Cir. Sept 27, 1995).

Further, as pointed out by Defendants, "[u]nder Ohio law, '[a]n action for libel [or] slander . . . shall be commenced one year after the cause of action accrued . . . .'" *Friedler v. Equitable Life Assur. Soc. of U.S.*, 86 Fed. App'x. 50, 53 (6th Cir. 2003), citing O.R.C.

§2305.11(A).  "[T]he statute of limitations begins to run when the allegedly defamatory words are first spoken or published regardless of the aggrieved party's knowledge of them." *Friedler*, 86 Fed. App'x. at 53, citing *Sabouri v. Ohio Dep't of Job & Family Servs.*, 145 Ohio App. 3d 651, 655 (10th Dist. 2001).  This Complaint was filed in 2013, more than seven years after the allegedly offending performance reviews were made.  As such, claims based on these statements are time-barred.

Because the alleged statements are non-actionable opinion and are time-barred, Count Sixteen for Defamation is dismissed.

### III. CONCLUSION

For these reasons, Defendant's Motion (ECF DKT #8) to Dismiss is granted as to Counts Four, Five, Six, Nine, Ten (as it applies to commissions), Eleven, Fourteen, and Sixteen.  Counts Seven, Eight and Count Ten (in part) remain pending before the Court for further proceedings.

**IT IS SO ORDERED.**

                                                **s/ Christopher A. Boyko**
                                                **CHRISTOPHER A. BOYKO**
                                                **United States District Judge**
**Dated:  December 10, 2013**